IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ROBERT NELL DANIELS,        :

    Plaintiff,          :

vs.                  :       CIVIL ACTION 09-00726-KD-B

BALDWIN COUNTY CORRECTIONS  :
CENTER, *et al.*,

                   :

    Defendants.

                   :

## REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding pro se, filed a Complaint under 42 U.S.C. § 1983. This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the Court on Defendants, Captain Jimmy Bennett, Corporal Michael Bryars, and Baldwin County Corrections Centers', Motion for Summary Judgment.[1] (Doc. 17). Upon consideration of Defendants'

---

[1] Plaintiff's complaint names the Baldwin County Corrections Center as a Defendant. However, Baldwin County Corrections Center is not a legal entity capable of suing or being sued, or formulating a response to the Plaintiff's allegations. Liability under § 1983 can only be imposed against an entity that is subject to being sued. Dean v. Barber, 951 F.2d 1210, 1214 (11th Cir. 1992). The capacity of a party to be sued is "determined by the law of the state in which the district court is held[.]" Fed.R.Civ.P. 17(b); see Dean, 951 F.2d at 1214.

Under Alabama law, the sheriff, or a jailer who is appointed by the sheriff, "has the legal custody and charge of
(Continued)

1

motion and supporting documents, and Plaintiff's response and materials filed in opposition, the undersigned finds that the motion is due to be granted, and that Plaintiff's action should be dismissed with prejudice for the reasons set forth below.

## I. FACTS AND PROCEEDINGS

From its review of the record, the Court summarizes the parties' allegations which are material to the issues addressed in this Report and Recommendation. On February 18, 2009, while incarcerated at Baldwin County Corrections Center, Plaintiff Robert Nell Daniels was involved in an altercation with another inmate in cellblock E. (Doc. 17, Ex. 7 at 2). According to the

---

the jail in his county and all prisoners committed thereto . . . ." ALA. CODE § 14-6-1. The jail in Baldwin County is operated by the County's Sheriff's department. An Alabama sheriff's department, however, lacks the capacity to be sued. <u>Dean</u>, 951 F.2d at 1214; <u>King v. Colbert County</u>, 620 So.2d 623, 626 (Ala. 1993); <u>White v. Birchfield</u>, 582 So.2d 1085, 1087 (Ala. 1991). It follows that the jail likewise lacks the capacity to be sued. <u>Russell v. Mobile County Sheriff</u>, No. Civ. A. 00-0410-CB-C, 2000 U.S. Dist. LEXIS 18045 (S.D. Ala. Nov. 20, 2000) (unpublished) (finding that the Mobile County Jail is not a suable entity); <u>Marsden v. Federal B.O.P.</u>, 856 F.Supp. 832, 836 (S.D.N.Y. 1994) (finding that the jail is not an entity amenable to suit); <u>House v. Cook County Dep't of Corr.</u>, No. 98 C 788, 1998 U.S. Dist. LEXIS 2262 (N.D. Ill. Feb. 13, 1998) (unpublished) (same); <u>May v. North County Detention Facility</u>, No. C 93-1180 BAC, 1993 U.S. Dist. LEXIS 84949 (N.D. Cal. July 21, 1993) (unpublished) (same). The undersigned thus finds that the Baldwin County Corrections Center is not a suable entity or a person for § 1983 purposes. Accordingly, the undersigned recommends that Plaintiff's claims against Defendant Baldwin County Corrections Center be dismissed as a matter of law.

record, on February 16, 2009, the decision was made to move Daniels from cellblock C to cellblock E.

According to Daniels, when he was informed of the cell change, he informed Corporal J. McCall and Sergeant Washington that "he had enemies on E Block and could not be housed in that block without incident." (Doc. 27-1, Daniels Aff. at 1). After Sgt. Washington asked if Daniels was refusing the move, he answered, "no, but I am not responsible if something happens." (Id. at 1).

According to Daniels, upon entering E Block on February 16, inmate Chris Watkins told him that "[h]e heard four guys planning an attack on me." (Id. at 2). Daniels claims that his cousin, Sammy Johnson, was moved along with him to E Block that same day, that Johnson began talking to Daniels' enemies, and later informed Daniels that he should "get the hell out of E Block" because his life was in danger. (Id. at 2). Daniels asserts that he survived his first day in E Block, and that the next day, he "informed every 'Officer' on every shift of [his] situation." (Id. at 2). Daniels further asserts that on February 17th, he personally spoke with Defendant Captain Jimmy Bennett about the situation. Specifically, Daniels claims:

> I spoke personally with Captain Bennett
> about the situation with me being in E-block
> and my "Enemies". I even gave him the names
> of my "enemies" as he requested. Captain

> said that he would take care of it, but this
> did not occur."[2]

(Id.). According to Daniels, his cousin, Sammy Johnson, began feeling "just as threatened and fearful" as Plaintiff, and he was able to successfully convince officers J. Robinson and R. Cox of the potentially dangerous situation, and to move Daniels back to C-block where he had no enemies. (Doc. 27-1, Daniels Aff. at 3).

Daniels alleges that on February 18, 2009, when Captain Bennett became aware of his cell change, Captain Bennett came to talk with him. According to Daniels, Bennett said " I see you put three people down as Enemies" but I don't want to hear it. You are moving back to E-block". (Id.) Daniels contends that although he pleaded with Defendant Bennett to move him anywhere except E-block, later that evening, he was told to pack his personal belongings. (Id.) Plaintiff alleges that he also informed Michael Bryars, the Corrections Center's Classification Officer, that he had "known enemies" in E-block and that he asked why he was being moved back to the block when they knew of the threat. According to Plaintiff, Bryars responded that

---

[2] Plaintiff also claims that during this period he spoke with his mother and his attorney, Dom Soto, about the situation. (Doc. 27, Daniels Aff. at 2).

"[i]t's not my call; it's Captain Bennett's call to move you back to E-block." (Id.)

Plaintiff alleges that he went into the block of his enemies, and that they came up to him, and told him "to get ready because they ain't taking no loss. [Plaintiff] knew what he was talking about . . . and pushed the intercom button and told the officer to get Corporal Robinson to the block and get [him] out of there. At that time, Travis Mitchell ran downstairs and attacked [Plaintiff]. (Id. at 3-4).

Officers called a "Code Red"[3] to respond to the fight. (Doc. 17-10, Ex. 7 at 3). According to the record, Daniels attempted to defend himself, but Mitchell had him pinned on the ground and was continuing to hit him in the head. (Id.). When Mitchell failed to stop after being warned, pepper spray was used to allow the officers to pull Mitchell off of Daniels. (Id.). Following the incident, both Mitchell and Daniels were moved to cellblock F and placed in disciplinary segregation. (Id.).

Immediately following the altercation, Daniels was seen by Baldwin County Corrections Center nurse, Jimmie Williams. She noted that Daniels complained of lower back pain, and was treated for a minor lower lip laceration, "no distress [was]

---

[3] A "Code Red" is used to signal an altercation between two inmates at Baldwin County Corrections Center.

noted." (Doc. 17-13, Ex. 10 at 2). At approximately 12:15 a.m., Daniels was found unresponsive in his cell on F Block. After initially being unable to wake him, Officers called a "Code Blue"[4] and Daniels was transported to North Baldwin Infirmary. (Doc. 17-11, Ex. 8 at 3). He was discharged at approximately 3:44 a.m. with a diagnosis of a minor head injury and instructions to monitor his cell overnight and administer Tylenol. (Doc. 17-14, Ex. 11 at 2). The record does not indicate any further physical complications resulting from the incident.

Along with Defendants Answer and Special Report, Defendants submitted the affidavits of Captain Jimmy Bennett, Corporal Michael Bryars and Major Dale Byrne. (Docs. 17-1, 17-2, 17-3). In his affidavit, Defendant Bennett alleges that after assessing the situation in cellblock C on February 16, 2009, he felt it in the best interest of maintaining order and security within the Corrections Center to separate several of the inmates in cellblock C because a number of them were residents of the Bay Minette, Alabama area, and some, including Daniels, were related. Thus, he directed Corporal Michael Bryars, the Corrections Center's Classification officer, to move Daniels and

---

[4] "Code Blue" is used to signal a medical emergency at Baldwin County Corrections Center.

one other inmate to cellblock E. (Doc. 17-1, Bennett Aff. at 3-4).

When Bennett returned to work on February 18, 2009, he discovered that Daniels had been moved from cellblock E back to cellblock C. Upon investigation, Bennett learned that Corporal Robinson had made the switch because Daniels had informed him that there were as many as three individuals in cellblock E that he had problems with, including his cousin Sammy Johnson and Travis Mitchell. (Id. at 4). Bennett states that he investigated the situation further by personally speaking with Daniels. According to Bennett, although he repeatedly asked Daniels why he did not want to be housed in cellblock E, and who did he fear in cellblock E, Daniels refused to identify any person in cellblock E who he feared, or did not wish to be housed with. (Id. at 4-5).

Bennett concluded that Daniels had informed Corporal Robinson of persons he purportedly feared in order to get a transfer back to cellblock C where he had friends and relatives, and that such manipulation had been commonly practiced by Daniels in the past. (Id.). Bennett asserts that he also concluded that no person in cellblock E presented an actual threat to Daniels given that he did not identify any such person to either him nor Corporal Bryars. Bennett further concluded that moving Daniels from cellblock C to cellblock E would reduce

the potential problems that could arise by having friends and family members housed in the same cellblock. Thus, Daniels was once again transferred to cellblock E. (Id. at 5-6). According to Bennett, upon reporting to work on February 19, 2009, he was informed of the fight between inmate Travis Mitchell and Daniels in cellblock E. He learned that the fight was over a cell phone which had been previously found in the Center. (Id. at 6)

In his affidavit, Defendant Michael Bryars alleges that during the relevant period, he was employed as the Classification Officer at the Center. (Doc. 17-2, Bryars Aff. at 2). According to Bryars, when Daniels was booked into the facility, he was expressly questioned about any potential enemies with whom he should not be housed, and that Daniels did not identify anyone. (Id. at 2). According to Bryars, Captain Bennett, on February 16, 2009, determined that it was in the best interest of maintaining order and security within the Corrections Center to separate several of the inmates in cellblock C because a number of them were residents of Bay Minette, Alabama area, and some, including Daniels, were related. Thus, Captain Bennett directed Bryars to move Daniels and one other inmate to cellblock E.

Upon returning to work on February 18, 2009, Bennett and Bryars discovered that Daniels had been moved from cellblock E back to cellblock C. At Bennett's direction, Bryars checked the

computer to determine whether there had been any problems which necessitated the change. (Id. at 3). No problems were noted in the computer. Later, Bryars discovered that Daniels had informed Corporal Robinson that he feared one or more of his cellmates in cellblock E, and as a result, Corporal Robinson switched Daniels back to cellblock C. According to Bryars, both he and Captain Bennett then had discussions with Daniels; however, Daniels refused to identify any alleged enemies to either of them. (Id. at 4).

On November 4, 2009, Plaintiff filed the present § 1983 action asserting that Defendants, Correctional Officer Jimmy Bennett, Correctional Officer Michael Bryars, and the Baldwin County Corrections Center endangered his life by moving him to E Block after he informed both Bennett and Bryars that he had enemies on that block. (Doc. 1). Plaintiff is seeking compensation in the amount of $75,000 dollars, and he would like the Court to "take the [j]ob from the officer so that this will never happen again to someone else." (Id. at 7).

Defendants filed their Answer and Special Report on August 31, 2010. Defendants deny Plaintiff's claims, and assert the affirmative defenses of sovereign, qualified, and absolute immunity. (Docs. 16, 17). Defendants also assert that Plaintiff failed to exhaust his available administrative remedies by utilizing the grievance procedure at Baldwin County

Corrections Center and/or pursuing an administrative remedy available to him through the Alabama State Board of Adjustment. (Doc. 17 at 23-24). Plaintiff filed his first response to Defendants' Answer and Special Report on September 22, 2010. (Doc. 19). Subsequently, Defendants' Answer and Special Report were converted into a motion for summary judgment, and the parties were provided an opportunity to file any responses in support or opposition. (Doc. 20). In response, Plaintiff then filed a "Motion to Stay Summary Judgment and Request for Leave to Amend Complaint; Memorandum in Support [of] Amended Complaint; Affidavit in Support Thereof and Request for Appointment of Counsel" ("Motion to Stay Summary Judgment") (Doc. 27). Daniels' Motion to Stay and Request for Counsel were denied; however, the Court has treated the information contained in his Memorandum and Affidavit as a response to Defendants' Motion for Summary Judgment. (Doc. 28).

## II.    SUMMARY JUDGMENT STANDARD

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles. The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment. "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

10

that there is no genuine issue as to any material fact….'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).

The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party. Barfield v. Brierton, 883 F.2d 923, 934 (11th Cir. 1989). However, the Court is only to "make all *reasonable* inferences in favor of the party opposing summary judgment … not to make all *possible* inferences in the nonmoving party's favor." Torjagbo v. United States, 285 Fed. Appx. 615, 619 (11th Cir. 2008) (emphasis in original).

Rule 56(e)(2) states that:

> [w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e).

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, . . . or is not significantly probative, . . .

summary judgment may be granted." <u>Anderson v. Liberty Lobby</u>, <u>Inc.</u>, 477 U.S. 242, 249-50 (1986) (internal citations omitted). "Summary judgment is mandated where a party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" <u>Custom Mfg. & Eng'g, Inc.</u> <u>v. Midway Servs.</u>, 508 F.3d 641, 647 (11th Cir. 2007) (citations omitted).

In a civil action filed by an inmate, although drawing "all justifiable inferences in [the inmate's] favor," federal courts

> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

<u>Beard v. Banks</u>, 548 U.S. 521, 529-30 (2006) (internal citation omitted). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is "no genuine issue for trial."'" <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007) (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u> <u>Corp.</u>, 475 U.S. 574, 586-87 (1986)).

### III. DISCUSSION

As discussed above, Daniels seeks redress pursuant to 42 U.S.C. § 1983 for alleged constitutional deprivations arising out of a physical attack by another inmate. (Docs. 1, 27). Specifically, he alleges that Defendants violated his Eighth Amendment rights by failing to protect him from the physical attack by inmate Mitchell. As discussed above, Defendants deny that they violated Daniels' constitutional rights, claim that he failed to exhaust his administrative remedies,[5] and assert the defenses of absolute and qualified immunity.[6] (Doc. 17).

---

[5] In Plaintiff's "Response to Defendant's Special Report" (Doc. 19 at 11-12) and "Motion to Stay Summary Judgment" (Doc. 27 at 9-10), he attached an inmate request form and handwritten grievance form dated February 24, 2009. Neither of these documents were included with Daniels' other grievances which Defendants submitted to the Court. (See Doc. 17, Ex. 15, 16). As such, the evidence as presented by both parties is disputed with respect to whether Daniels has properly exhausted his remedies. Accordingly, the Court assumes without deciding that Daniels exhausted his remedies and reaches the merits of his claim.

[6] Although it is not clear, the Court assumes that Daniels is suing Defendants in both their individual and official capacities. As state officials, Defendants are entitled to absolute immunity from suit for damages in their official capacities. See Harbert Int'l v. James, 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment).

Furthermore, "[q]ualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. (Continued)

Section 1983 provides in pertinent part that:

> Every person who, under color of any
> statute, ordinance, regulation, custom,
> or usage, of any State or Territory or
> the District of Columbia, subjects, or
> causes to be subjected, any citizen of
> the United States or other person
> within the jurisdiction thereof to the
> deprivation of any rights, privileges,
> or immunities secured by the
> Constitution and laws, shall be liable
> to the party injured in an action at
> law, suit in equity, or other proper
> proceeding for redress . . . .

42 U.S.C. § 1983 (1994).

The Eighth Amendment provides that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. Amend. VIII. The Eighth Amendment's proscription against cruel and unusual punishment prohibits prison officials from exhibiting deliberate

---

730, 739 (2002)). Until recently, the Court followed the mandatory procedure of Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part, Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009), which required the Court to determine whether the plaintiff's allegations, if true, established a constitutional violation and, if the first step was satisfied, to determine whether the right at issue was clearly established at the time of the alleged misconduct. While that procedure is now discretionary, as opposed to mandatory, see Pearson, id., the Court finds it beneficial in this case. Because the Court finds that Plaintiff's evidence does not establish a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201.

indifference to a substantial risk of serious harm to an inmate. <u>Farmer v. Brennan</u>, 511 U.S. 825, 828 (1994).

In <u>DeShaney v. Winnebago County Dep't of Soc. Servs.</u>, 489 U.S. 189 (1989), the Supreme Court summarized a state's constitutional responsibilities with regard to inmates:

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. . . . The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs – – *e.g.*, food, clothing, shelter, medical care, and reasonable safety – – it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

<u>DeShaney</u>, 489 U.S. at 199-200 (citations omitted).

In order to prevail on his Eighth Amendment claim, Daniels must prove three elements: "(1) a condition of confinement that inflicted unnecessary pain or suffering, <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399 (1981), (2) the defendant's 'deliberate indifference' to that condition, <u>Wilson v. Seiter</u>, 501 U.S. 294, 111 S. Ct. 2321, 2327 (1991), and (3) causation, <u>Williams v. Bennett</u>, 689 F.2d 1370, 1389-90 (11th Cir. 1982)." <u>LaMarca v. Turner</u>, 995 F.2d 1526, 1535 (11th Cir. 1993).

15

In <u>Sims v. Mashburn</u>, 25 F.3d 980, 983 (11th Cir. 1994), the court described the first two elements as follows:

> An Eighth Amendment claim is said to have two components, an objective component, which inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which inquires whether the officials acted with a sufficiently culpable state of mind.

<u>Sims</u>, 25 F.3d at 983.

The objective component of an Eighth Amendment claim inquires whether the alleged wrongdoing amounted to the infliction of "unnecessary pain or suffering upon the prisoner." <u>LaMarca</u>, 995 F.2d at 1535. This standard requires that the alleged deprivation be "objectively, 'sufficiently serious.'" <u>Farmer</u>, 511 U.S. at 834 (quoting <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991)). The objective standard "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency. . ., but must be balanced against competing penological goals." <u>LaMarca</u>, 995 F.2d at 1535 (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 102 (1976) (internal quotation marks omitted)).

The subjective component of an Eighth Amendment claim generally "inquires whether the officials acted with a sufficiently culpable state of mind." <u>Sims</u>, 25 F.3d at 983-84

(citing Hudson v. McMillian, 503 U.S. 1, 8 (1992)). This component "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" Farmer, 511 U.S. at 834 (quoting Wilson, 501 U.S. at 297).

In prison condition cases, the required state of mind for a defendant is "deliberate indifference" to an inmate's health or safety. Id. (citations omitted). In defining "deliberate indifference," the Supreme Court in Farmer stated:

> We hold . . . that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer, 511 U.S. at 837. The court concluded that the "subjective recklessness" standard of criminal law is the test for "deliberate indifference" under the Eighth Amendment. Id. at 839-40. Accordingly, "a claim based on deliberate indifference contains three components: "(1) subjective knowledge of a risk of serious harm; 2) disregard of that risk; 3) by conduct that is more than negligence." McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999). There is no liability for "an official's failure to alleviate a significant

risk that he should have perceived but did not...." _Farmer_, 511 U.S. at 838. Further, a defendant may avoid liability by showing that he "did not know the underlying facts indicating a substantial danger, or that he knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." _Farmer_, 511 U.S. at 844.

A prison official's duty under the Eighth Amendment is to ensure "reasonable safety," a standard that incorporates due regard for prison officials' "unenviable task of keeping dangerous men in safe custody under humane conditions." _Farmer_, 511 U.S. at 844-45 (citations omitted). "Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." _Id._

Having set forth the general legal principles relevant to Plaintiff's claims, the Court now turns to the application of those legal principles to the facts before the Court. In his Complaint, Daniels claims that Defendants violated his _Eighth Amendment_ right to be free from cruel and unusual punishment by failing to protect him from the physical attack by inmate Mitchell. Plaintiff argues that Defendants, Officer Bennett and Officer Bryars, in effect caused his injuries by moving him to

cellblock E after he notified them as well as other officers that he had enemies on that block.

In order to establish the objective element of an Eighth Amendment claim in a failure to protect case, an inmate must establish that the conditions under which he was incarcerated presented "a substantial risk of serious harm." Farmer, 511 U.S. at 834. It is settled that "an excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm...." Purcell ex. rel. Estate of Morgan v. Toombs County, Ga., 400 F.3d 1313, 1320 (11th Cir. 2005) ("confinement in a prison where violence and terror reign is actionable."). On the other hand, "occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment." Purcell, 400 F.3d at 1320 (citations omitted).

Baldwin County Corrections Center has in place a system of inmate classification which classifies inmates based on a classification interview and 22 different factors. (Doc. 17-3, Byrne Aff. at 3). One of the factors involved in the classification is whether the inmate has any persons they would consider enemies in the facility. (Id. at 3). It is the official policy of the Corrections Center to not place inmates with persons designated as enemies, unless no other housing is available, or unless an inmate uses the designation of enemies to manipulate the system in order to be housed with particular

inmates. (Id. at 5). The classification process is repeated every six months. (Id. at 4).

In this case, Daniels has not disputed the fact that upon his placement at the Center, he did not identify Mitchell as an enemy when he went through the classification procedure. Additionally, Daniels has not disputed Defendants' assertion that on prior occasions, Daniels had attempted to manipulate the housing system. Accordingly, the unrefuted record establishes that Officers Bennett and Bryars, in following the policies in place at Baldwin Corrections Center, removed Daniels from family and friends in cellblock C as a preventive safety measure, and that in so doing, they did not create an objective "substantial risk of harm," given the information that was available to them at the time[7]. The record is devoid of any evidence that at the time of the move, either Bennett or Bryars were aware of any prior run-ins between Daniels and inmate Mitchell or of any specific threats made against Daniels by inmate Mitchell or anyone else.

"[A] prison custodian is not the guarantor of a prisoner's safety." Purcell, 400 F.3d at 1321 (citations omitted). "[N]ot

---

[7] While it appears that both Daniels and his cousin, Sammy Johnson, were transferred from cellblock C to cellblock E, it is not clear from the record which of Daniels' family and friends remained in cellblock C.

... every injury suffered by one prisoner at the hands of another ... translates into constitutional liability for prison officials responsible for the victim's safety." _Farmer_, 511 U.S. at 834. As discussed above, a prison official's duty under the Eighth Amendment is to ensure "reasonable safety." _Farmer_, 511 U.S. at 844. In the present case, Defendants made the decision to move Daniels to cellblock E in an effort to do just that as they attempted to prevent a potentially dangerous situation by separating inmates who were friends from the Bay Minette area or were related.

Additionally, Daniels has not established that he was exposed to the "constant threat of violence" while incarcerated at Baldwin County Corrections Center, _see_ _Purcell_, 400 F.3d at 1320, or to any other condition that presented "a substantial risk of serious harm." _Farmer_, 511 U.S. at 834; _see also_ _Hale v. Tallapoosa County_, 50 F.3d 1579, 1583 (11th Cir. 1995) ("Hale produced evidence that inmate-on-inmate violence occurred regularly" in the two years preceding the attack). Accordingly, the undersigned opines that Daniels has failed to satisfy the objective element of his Eighth Amendment claim.

Assuming _arguendo_ that Daniels' evidence was sufficient to satisfy the objective element of his Eighth Amendment claim, his allegations, taken as true, do not support a claim that Officers Bennett and Bryars "actually knew" of a substantial risk of harm

to him. Under the subjective component of the *Eighth Amendment* analysis*,* deliberate indifference requires that the prison official be aware of both the "facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, 511 U.S. at 837, 114 S. Ct. at 1979. A prison official cannot avoid liability, "by showing that  . . . he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault . . . . " <u>Id.</u> at 843, 114 S. Ct at 1982. However, *Eighth Amendment* liability may be avoided by showing: "(1) 'that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger'; (2) 'that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent'; or (3) that 'they responded reasonably to the risk, even if the harm ultimately was not averted.'" <u>Rodriguez v. Sec'y Dept. of Corr.</u>, 508 F.3d 611, 617-18 (11th Cir. 2007) (citing <u>Farmer</u>, 511 U.S. at 844, 114 S. Ct. at 1982-83).

Plaintiff's allegations fail to raise a question of fact as to the subjective component. The complaints made by Daniels were not specific enough to place Defendants on notice of a threat of actual harm given the totality of the circumstances surrounding Daniels' cell change. Daniels alleges that he repeatedly

conveyed to multiple officers, including Bennett and Bryars, that he had "enemies" in cellblock E. However, at no time does he allege that he conveyed any specifics underlying the alleged problems between himself and his enemies to an officer. In fact, aside from conclusory allegations that Mitchell and others were out to get him, Daniels has failed to allege any facts which would have placed Defendants on notice of a substantial risk of harm. Vague allegations concerning purported threats are not sufficient to impute actual knowledge. "[T]hreats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." Prater v. Dahm, 89 F.3d 538, 541 (8th Cir. 1996).

In considering the information Daniels conveyed to Defendants regarding a potential attack, it is important to consider the evidence in its totality. See Rodriguez, 508 F.3d at 621, n. 15. Other than to allege that Defendants were repeatedly advised that Daniels had "Enemies" in cellblock E, Plaintiff has not articulated, and the record does not reflect, any specific facts which would have caused Defendants to be concerned about an assault, such as previous altercations between Mitchell and Daniels, or a history of bad blood between Daniels and any other inmate. See McBride v. Rivers, 170 Fed. Appx. 648, 652 (11th Cir. 2006)(Prisoner's complaint to a guard that "me and that dude had problems. I'm in fear for my life..."

did not amount to subjective knowledge of risk of harm where Defendants lacked specific facts from which to draw an inference that a risk of serious harm existed). Moreover, Daniels has not alleged nor presented any facts which even suggest the true source of the conflict between him and his alleged enemies.

Further, courts have recognized that "inmate allegations regarding threats are often simply ploys to 'arrange a room move.'" Metheny v. Smith, 2006 U.S. Dist. LEXIS 11645, *25 (S.D. Ga. Jan. 2006)(citing Pagels v. Morrison, 335 F.3d 736, 741 (8th Cir. 2003)(inmate's letter concerning threat to his safety insufficient to establish deliberate indifference where official receiving letter testified that he did not actually believe that the risk was serious and that such allegations were common among inmates trying to change cellmates)). Indeed, as noted supra, Daniels has not disputed Defendants' assertion that in the past, he had attempted to manipulate the housing system, and at the time of the cell change order, he was residing with friends and family in cellblock C.   (Doc. 17 at 12). Accordingly, the evidence shows that given the absence of specific facts indicating a real threat of harm, Officers Bennett and Bryars acted on what appeared to be another attempt by Daniels to manipulate the housing system in order to remain with his friends and family.

In Carter v. Galloway, 352 F.3d 1346 (11th Cir. 2003), the Eleventh Circuit confronted the issue of the sufficiency of inmate complaints to support a finding of "actual knowledge" of a substantial risk of harm. In Carter,:

> An inmate was stabbed with a shank by a fellow inmate with whom he had been placed. . . .[The Eleventh Circuit] rejected the inmate's claims [against various prison officials] on the ground that the comments he made to the officials were too vague to show that the officials had "actual knowledge" of a substantial risk of serious harm. Specifically, [the Eleventh Circuit] noted that the only complaints the inmate made to prison officials were that the attacker-inmate (1) paced his cell like a wild animal, (2) wanted to fake a hanging in order to secure a transfer, and (3) told the plaintiff-inmate that he would help the attacker-inmate carry out the hanging "one way or another."

Rodriguez, 508 F.3d at 621 (internal citations omitted). Later, in Rodriguez v. Sec'y Dept. of Corr., 508 F.3d 611 (11th Cir. 2007), the Court held that where the inmate had advised prison officials: (1) that he was a former Latin King [gang] who decided to renounce his membership; (2)that members of the Latin Kings had threatened to kill him when he returned to the compound [general prison population] in retaliation for his renunciation; (3) that the compound at ECI was heavily populated with Latin Kings; and (4) that, in order to prevent an attempt on his life, he needed either to be transferred to another institution or be placed in protective custody, the plaintiff's

allegations were sufficient to create a genuine issue as to the defendants' "actual knowledge" of a substantial risk of harm.

In this case, Daniels has not presented facts sufficient to create a genuine issue with respect to "actual knowledge" of a substantial harm. The evidence, even when viewed in the light most favorable to Daniels, fails to establish an issue of "actual knowledge". As noted supra, Daniels' vague complaints about unspecific problems with his alleged enemies were simply not sufficient to place Defendants on notice of a substantial risk of harm. This is particularly true given Daniels' history of attempting to manipulate the housing system.

At best, Daniels' allegations suggest negligence or simple misjudgment on the part of Officers Bennett and Bryars. However, the "negligent failure to protect an inmate from attack does not justify liability under § 1983." Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990). Additionally, while in hindsight, the prudent course would have been to refrain from assigning Daniels to cellblock E, courts cannot "allow the advantage of hindsight to determine whether conditions of confinement amounted to cruel and unusual punishment." Purcell v. Toombs County, 400 F.3d 1313, 1320 (11th Cir. 2005).

The assault of Daniels by inmate Mitchell was an unfortunate event; however, it does not reflect deliberate indifference on the part of Defendants. Mitchell was pulled off

of Daniels post haste (Doc. 17, Ex. 7 at 3), and Daniels was provided prompt medical attention, including initial medical treatment at the prison, and a trip to North Baldwin Regional. (Id., Ex. 8, 10). Fortunately, it appears from the record that Daniels has suffered no permanent injuries from the incident.

Because Daniels has failed to show that Defendants actually knew that a substantial risk of serious harm existed, he has failed to satisfy the subjective element of his Eighth Amendment claim as well. Accordingly, Defendants are entitled to judgment as a matter of law on Plaintiff's Eighth Amendment failure to protect claim.

<u>IV.  CONCLUSION</u>

Based on the foregoing, the Court concludes that Defendants, Correctional Officer Bennett and Correctional Officer Michael Bryars, are entitled to summary judgment in their favor on all claims asserted against them by Plaintiff. Accordingly, it is recommended that Defendants' Motion for Summary Judgment be GRANTED, that this action be DISMISSED with prejudice, and that judgment be entered in favor of Defendants and against Plaintiff on all claims.

The attached sheet contains important information regarding objections to this recommendation.

DONE this **23rd** day of **June, 2011.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**

## MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.   *Objection*.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[8] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a

---

[8] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  Fed. R. Civ. P. 72(b)(2).

brief in support of the objection may be deemed
an abandonment of the objection.


A magistrate judge's recommendation cannot be appealed to a
Court of Appeals; only the district judge's order or judgment
can be appealed.

2.    ***Transcript (applicable Where Proceedings Tape Recorded).***
Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the
Magistrate Judge finds that the tapes and original records in
this case are adequate for purposes of review.  Any party
planning to object to this recommendation, but unable to pay the
fee for a transcript, is advised that a judicial determination
that transcription is necessary is required before the United
States will pay the cost of the transcript.

DONE this **23rd** day of **June, 2011.**

                                    ____/s/ SONJA F. BIVINS____
                                    **UNITED STATES MAGISTRATE JUDGE**